FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

19 SEP 25 AM 11:19

ROBERT N. TRGOVICH
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | |
|---|---|
| GORDON GRAVELLE | ) |
| Plaintiff. | ) |
| vs. | ) Case No. 1:19CV409 |
| AVIS INDUSTRIAL CORPORATION | ) JURY DEMAND REQUESTED |
| Defendant | ) |

# COMPLAINT

1. This action is brought by Plaintiff, Gordon R. Gravelle ("Gravelle"), against Defendant, Avis Industrial Corporation ("Avis"), for damages arising from breach of contract and breach of covenant of good faith and fair dealing.

//

## I. JURISDICTIONAL STATEMENT

### A. Jurisdiction

2. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds the sum of $ 75,000, exclusive of interest and costs of the court, and complete diversity of citizenship exists between the parties, as the Gravelle resides in Canada, and Avis has its principle place of business in the state of Indiana.

3. This court has personal jurisdiction over the Defendant corporation Avis because its corporation's principal place of business is located in this state.

### B. Venue

4. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim(s) occurred in this District.

//

## II. THE PARTIES

5. Plaintiff, Gordon Gravelle, o/a CodePro Manufacturing ("CodePro") and/or Rapidkey Industries ("Rapidkey"), collectively hereinafter ("Plaintiff"), at all material times hereto, was and remains, a Canadian citizen, with his principal place of domicile and business, located in Thunder Bay, Ontario, Canada.

6. Defendant Avis Industrial Corporation ("AVIS"), upon information and belief, is a privately owned corporation and entity duly incorporated under the laws of the state of Indiana, USA, with its principal place of business and headquarters located at 1909 South Main Street, Upland, Indiana 46989 USA.

## III. AVIS EMPLOYEE(S)

7. Ricky King ("King"), an individual, at all material times, was employed by Avis as a general manager, and at all material times hereto, acted with ostensible authority for, and on behalf of, defendant Avis.

Danny Teixeira ("Teixeira"), an individual, at all material times, was president of Cumsa Distribution, located in Texas, USA. A company which was a wholly owned subsidiary of Avis. In or about September 2013, he was tasked to oversee in part, the business relationship between Gravelle and Avis and Mr King.

## IV. FACTS

8. Plaintiff Gravelle owned and operated a manufacturing company, CodePro, which restricted itself to the design and production of electronic key cutting equipment. Established in 1997, CodePro Manufacturing managed to obtain international market share, as evidenced by sales throughout North America and abroad. Its flagship model, the CodePro 4500 ("CODEPRO 4500"), was first sold in or about, July 1997.

9. A1 Security, a sub-division and/or product line of Avis Industrial, produced locksmith tools and supplies for the past 35 years, and promotes having achieved superior recognition throughout the industry.

10. Cumsa, a wholly owned subsidiary of Avis Industrial, distributed well-known automotive products, such as: Lockworks, Trailerworks, Neihoff, and its most recent acquisition, Lockcraft.

11. In or about January 2011, Plaintiff Gravelle approached Defendant AVIS, by and through its general operations manager, Mr King, to discuss the potential of exploring a joint business partnership with respect to the design, development and manufacturing of electronic key cutting machines, for both standard and high security keys.

12. On or about May 4, 2011, Mr King, acting expressly for, and on behalf of Avis, agent for Defendant AVIS, obtained expressed approval from Avis to explore a joint business venture with the Gravelle.

13. Subsequently, the Gravelle and Mr King negotiated at length, both by way of telephone and emails, the terms and conditions of a joint business arrangement.

14. On July 4, 2011, Gravelle drafted a written licensing agreement (herein after "Contract" or "LICENSING AGREEMENT"), and which he emailed same to Mr King for his review, by and through written email correspondence.

15. Following review, Mr King expressed some of his concerns with the initial draft Contract.

16. On July 10, 2011, Gravelle pursuant to the parties discussions, revised the draft Contract and emailed it to Mr King..

17. On July 13, 2011, Gravelle, on three distinct occasions, amended and forwarded to Mr King, revised drafts of the Contract changes, which reflected the parties ongoing contract negotiations. Gravelle asserts that the version of the Contract on July 13, 2011 became the Contract between Avis and himself.

18. On July 14, 2011, Mr King requested Gravelle's banking particulars, so that the parties could commence their new joint development / long- term licensing arrangement, as reflect in the Contract..

19. On July 15, 2011, pursuant to the Contract, Mr King on direct behalf of his employer, Defendant Avis, initiated a wire transfer to Gravelle, in the amount of $ 5,000 USD, for the purchase of two Rapidkey machines.

20. Gravelle states the payment was made pursuant to the expressed terms of the parties licensing Contract, Section 3, which governed the contractual expectations and/or obligations arising thereunder, as between Gravelle and Defendant Avis.

21. Plaintiff further pleads the payment and the said performance by Avis, and the acceptance thereupon by the Gravelle, ultimately ratified and bound the parties, to the terms of the written Contact which had been freely negotiated at length, and contained all the essentials terms to reflect the meeting of the minds, by and between Gravelle and Mr King, who in turn, was ultimately acting with <u>ostensible</u> authority on behalf of Avis.

//

23. On July 29, 2011, Mr King at his own accord, amended the Contract of July 13, 2011, to include in part:

> "It is both parties belief this venture is the <u>beginning</u> of a <u>long term</u> Relationship that will <u>include</u> further development and promotion of a <u>broader line</u> of Rapid Key products primarily marketed by A1 Security." [emphasis added]

24. In the alternative, if there was no binding Contract at time, the Plaintiff pleads that the proposed various amendments by Mr King, operated as a counterproposal to the draft Contract of July 13, 2011.

25. The proposed amendments and/or "counterproposal", were ultimately received and accepted by Gravelle.

26. Gravelle pleads that although no formally executed Contract exists, a binding enforceable agreement Contract as between Avis and himself, came into existence, either on July 13, 2011, which was amended on July 29, 2011 as above, or alternatively, by virtue of amendments advance in the counter proposal, which was sent by Mr King, on July 29, 2011.

//

27. Gravellet pleads that <u>mutual assent</u>, ratification, and substantial performance of the Contract has been established, which in turn, gave rise to a valid and enforceable Contract("CONTRACT"), as evidenced in <u>part</u>, by:

A) Avis issuing $ 5,000 payment (July 2011); weekly participation in joint development of the Rapid key machine; prominently advising the Rapid key machine on their website (December 2012); publicly exhibiting Rapid key machine at largest annual industry trade show (July 2013); and placing a full page color advertisement in national trade magazine (July 2013); and.

- and -

B) Gravelle having substantially performed under the Contract, by developing a new commercially ready "Rapidkey 7000" key machine, and taking <u>direction</u> by A1 Security throughout its development.

28. Moreover, over the course of the next two years, Gravelle proceeded to substantially perform under the Contract, as evidenced by him having successfully developed a highly advanced, state of the art, electronic key cutting machine, named the Rapidkey 7000, which is not only commercially viable, but well received by various end-user customers, located both in Canada, and the United States.

29. Throughout the Rapidkey 7000 development, Avis played an active role in its overall design, incorporated features and functionality.

30. Gravelle further pleads notwithstanding, Avis by and through A1 Security had actively participated in production of the Rapidkey machine, as evidenced by them manufacturing, at its facility, an essential component needed to assemble the Rapidkey 7000 machine(s).

31. In or about May 2012, fully anticipating the need to ready himself to fulfill monthly orders placed by Avis, Gravelle states he extended himself financially, by ordered (100) custom dual voltage AC motors, incurring an expenditure cost of approximately $ 10,000.

32. In November 2012, fully anticipating the need to fulfill monthly orders from Avis for Rapidkey machines, Gravelle further states he leased an off-site facility, in order to commence full production of the Rapidkey 7000 machine, incurring a substantial liability.

33. In or about December 2012, pursuant to one of the salient terms of the parties written Contract, Defendant, Avis, by and through their general manager, Mr King, started to promote the Rapidkey 7000 machine on its corporate website www.demanda1.com.

34. On or about December 10, 2012, Gravelle again fully anticipating substantial monthly orders from Mr King/Avis for the Rapidkey 7000 machine, further extended himself financially, having purchased a power hydraulic hacksaw, in order to simply production.

35. Between February and May 2013, inclusive, Gravelle further again anticipating substantial monthly orders from Mr King/Avis, commenced fabricating (23) Rapidkey 7000 key machines, thereby incurring substantial financial expenditures, in excess of over $ 20,000.

36. In or about June 2013, Avis noted on the landing page of its website, that the Rapidkey 7000 machine was "going to be one of the most exciting new tools for locksmiths."

37. In July 2013, pursuant to another salient term of the parties Contract, Mr King, on behalf of A1 Security, placed a full-page color ad in an industrial trade magazine, namely the Locksmith Ledger, advertising the Rapidkey 7000 machine.

38. Also in July 2013, pursuant to yet another salient term of the parties Contract, Avis exhibited the Rapidkey 7000 machine at a trade show, ALOA 2013, Notably, the largest annual trade show within the locksmith/security industry.

39. On August 6, 2013, Gravelle received an email from Mr King, indicating how much faith he has had in the Rapidkey 7000 project.

40. Further to this email, Mr King indicated that he would do more advertisements, as the parties had "agreed" to.

41. On August 14, 2013, Gravelle received an email from Mr King advising that Avis was going through some restructuring.

42. On or about August 22, 2013, Gravelle received an telephone call from Mr Teixeira, President Cumsa, to which in part, he denied the existence of any contractual obligations between Gravelle and AVIS, and requested that Gravelle prepare buy-out options, for Avis to secure the intellectual rights to the Rapidkey 7000 machine. Cumsa is a wholly owned subsidiary company of Avis, located in Texas, USA.

43. On Friday, August 23, 2013, Gravelle received an email from Mr King, advising Gravelle to submit his best sales proposal, under the threat to abandon the project, and move on to plan "B".

44. Plaintiff pleads that at the time of such threat, Mr King, on behalf of Avis, was while acting in concert with Mr Danny Teixeria, and they were fully aware that their abandonment of their contractual commitments would prove fatal to the new business venture.

45. Gravelle further pleads that at the time of such a threat, there was a substantial imposition of bargaining power, to which AVIS was the dominant party.

46. Additionally, Gravelle states that there was an implied covenant of good faith between the parties, to which Defendants Avis intentionally exploited and abused, in an attempt to wrongfully procure, and/or extort, the rights to the Rapidkey 7000 machine, at far below its true perceived value.

47. On September 13, 2013, Gravelle received an email from Mr King, stating Avis' intent to unilaterally terminate the parties' business relationship.

48. Gravelle did not accept the unilateral termination of the parties' business relationship, being the Contract. He, in turn, immediately put Avis, Mr King and Danny Texiera on notice in writing to that effect, by way of email. Gravelle ultimately pressed again for full performance of their contractual obligations owed to the him.

49. The aforesaid written notice was sent pursuant to section 6 of the parties Contract, which expressly provided Avis 45-days to cure any breach perceived by either party.

50. Accordingly, Defendant Avis had until October 28, 2013, to notify Plaintiff Gravelle of its intent to continue with their contractual obligations owed under the Contract.

50. Plaintiff further states nothing in the parties Contract afforded either party the right to unilaterally terminate the Contract. .

51. On October 1, 2013, Defendant Avis sent written notice to Gravelle stating, in pertinent part, that its decision to end their relationship was final. This conduct was without notice, and for an improper purpose, to the extend that it breached a covenant of good faith owed between Avis and Gravelle, causing direct injury to Gravelle.

52. In April 2015, Gravelle had no other alternative but to sell the his relevant intellectual property rights for his key machine to another manufacturer, in the nominal amount of $ 10,000 USD.

53. The actions of Avis, as above, caused Gravelle to needlessly sustain immeasurable loss and injury, including actual and expectancy, in excess of $ 6 million dollars.

54. Such substantial loss and injury to Plaintiff Gravelle was readily foreseen by Avis.

//

## V. CAUSES OF ACTION

### Count I - Breach of Contract by AVIS

55. Paragraphs 1 thru 54 are re-alleged as though fully set-forth herein.

56. The Gravelle pleads that a binding and enforceable Contract existed with Defendant Avis Industrial, to which all parties freely assented to.

57. Avis was bound, and so intended to be bound by the aforementioned Contract.

58. Gravelle pleads that said conclusion can be found by and through:

   a) substantial performance and consideration by both parties;

   b) the conduct taken by both parties;

   c) the written correspondence between the parties;

   d) the completed wire transfer initiated by Defendant Avis Industrial made pursuant to the expressed terms of the Contract;

   e) amount of time that had passed since the Contract was negotiated, and Avis expressing its intent to end the parties joint business relationship. Notably being over 2 years;

   f) the parties ultimately and freely having agreed on all the essential elements needed to form a binding and enforceable Contract.

59. All of which readily establishes that the parties ultimately "ratified" and "assented" to the Contract, notwithstanding that it was never formally signed, thereby binding the parties to the Contract, as they both so intended to be bound, on or before July 29, 2011.

60. On September 13, 2013, Defendant AVIS, by and though its general manager, Mr King, formally put Gravelle on notice that they were unilaterally terminating the parties business relationship, namely the Contract.

61. Gravelle refused to accept the anticipatory repudiation of the parties Contract, and pressed Defendant Avis for its full performance.

62. Accordingly, on September 26, 2013, Gravelle states that pursuant to section "6" of the parties Contract, he notified by email, Avis through Mr King, the general manager for Avis Industrial, indicating that they were in breach of the Contract, by unilaterally terminating their business relationship and/or contractual obligations.

63. Section "6" of the parties Contract provided a mandatory 45-day window for either party to remedy any perceived Contract breaches.

64. As such, Defendant Avis Industrial was afforded until November 10, 2013 to remedy the notice its breach, pursuant to the notice having been sent by Gravelle on September 26, 2013.

65. On October 1, 2013, Defendant Avis by and through their its legal counsel, formally advised Gravelle in writing, that Avis' decision to prematurely terminate the Contract was in fact, a final decision.

66. Gravelle once again refused to accept the anticipatory repudiation of the parties Contract, and pressed Defendant AVIS for their performance thereto.

67. Defendant Avis ultimately choose to ignore Gravelle's notice of breach, and thereupon breached the parties Contract by its failure to meet various contractual obligation in the Contract owed to the Gravelle.

68. The breach was <u>continuous and/or rolling in nature</u>, subsisting between September 13, 2013 through until September 30, 2014, inclusively.

//

69. Particulars of the breaches by Defendant Avis includes, but not limited to the following failures in respect of its obligations in the Contract:

(A) its failure to take the Rapidkey 7000 to various industry trade shows;

(B) its failure to promote the Rapidkey 7000 machine within industry trade magazine(s), on an annual basis;

(C) its failure to commit to a long term joint business venture;

(D) its failure to obtain written article(s) within industry trade magazines relating to the Rapidkey 7000.; and

(E) its failure to stock Rapidkey 7000 in their inventory.

70. In October 2014, Gravelle had no other alternative but to sell the intellectual property rights for his key machine(s) to a rival competitor located in the United States, at a substantial loss from fair market value, as a direct result of Defendant Avis having breached their contractual obligations owed to him. The actual amount to be proven at trial, being in excess of $ 1 million USD.

71. Such losses were reasonably foreseeable by the Avis, to the extent same should be entirely awarded to Gravelle as damages, in order to restore Gravelle back to the same financial state, making him whole again, but not for the egregious Contract breach.

72. Moreover, Gravelle states that due to the ongoing contractual breaches by Defendant Avis Industrial, he suffered immeasurable loss and injury, arising from lost business opportunity, to design, market and distribute other key machines, such as a high security TRAK key machine. The actual amount to be proven at trial, be in excess of $ 4 million USD.

73. Wherefore, preys against Defendant Avis Industrial, actual, expectancy, reliance and compensatory damages. The actual amount to be proven at trial, being in excess of $ 5 million USD.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court:

(A)   Declare that the parties had a valid and enforceable Contract, as entered into back in July 2013;

(B)   Declare that this underlying action is not barred by limitation period;

(C)   Declare that Avis Security breached the Contract by unilaterally terminating it without just cause;

(D)   Award Gravelle his actual, expectancy for loss of business opportunity, reliance and compensatory damages, in the amount to be determined at trial, plus interest;

(D)   Award Gravelle his costs of bringing this action, as well as such other and additional relief as this court Court may determine to be just and proper.

## JURY DEMAND

Plaintiff requests a jury trial on the issue of liability and any other issue cognizable by a jury.

DATED: September 24, 2019

*/s/ G. Gravelle*

Gordon R. Gravelle pro se
1824 Moodie Street E
Thunder Bay, Ontario, P7E 4Z2
Canada

Tel: (807) 629-9024
Email: ggravelle71@hotmail.com

Plaintiff.